UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61225-CIV-ROSENBAUM/HUNT

STIG SOLNES,

       Plaintiff,

v.

WALLIS & WALLIS, P.A., and
PETER WALLIS, individually,

       Defendants.
_____/

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants Wallis & Wallis, P.A., and Peter Wallis's Motion to Dismiss [D.E. 7]. The Court has carefully considered Defendants' Motion, all supporting and opposing filings, and the record. For the reasons set forth below, the Court now denies Defendants' Motion to Dismiss as it relates to Counts I and II of the Complaint and grants it as it regards Counts III and IV of the Complaint.

*I.  Background*

This matter arises from a yacht sale gone wrong. Essentially, Plaintiff Stig Solnes asserts that he paid for the vessel, but the seller failed to deliver it. Defendant Wallis & Wallis, P.A. ("WWPA"), accepted the money on the seller's behalf and forwarded it to the seller, even though, Solnes contends, WWPA and Defendant Peter Wallis knew that the boat in question had been sold to someone else and would never be delivered to Solnes. Solnes sues each Defendant for breach of contract and breach of implied contract regarding their escrow responsibilities.

More specifically, according to the Complaint, Solnes entered into a Vessel Purchase and Sale Agreement ("Agreement") with Unique Boats, Inc., or Thibaut International, Inc., or both ("Seller"), for the purchase of a 2001 62-foot Fairline Squadron known as the *M/Y Symphony*. D.E. 1 at ¶ 6. Under the Agreement, the purchase price of $300,000.00 was to be paid to the Seller by wire transfer to the account of WWPA or by cashier's check made payable to WWPA—IOTA account. D.E. 1-1 at ¶ 1. The Agreement called for Solnes to pay the purchase price in two transactions: a $35,000.00 deposit and the remainder of the fee. *See id.* at ¶¶ 2, 10.1, 10.2.

Under the terms of the Agreement,

> 10.1 Wallis & Wallis, P.A. shall act as an Escrow Agent with regard to the Deposit only and shall be subject to responsibilities as an Escrow Agent as follows:
>
> Any Escrow Agent receiving funds or equivalent is authorized and agrees by acceptance of them to deposit them promptly, hold same in escrow and, subject to clearance, disburse them in accordance with terms and conditions of this Agreement. Escrow Agent may, at Escrow Agent's option, continue to hold the subject matter of the escrow until the parties mutually agree to its disbursement; or until a judgment of a court of competent jurisdiction shall determine the rights of the parties; or Escrow Agent may deposit same with the Clerk of the Circuit Court having jurisdiction of the dispute. Upon notifying all parties concerned of such action, all liability on the part of Escrow Agent shall fully terminate, except to extent of accounting for any items previously delivered out of escrow. Any suit between Buyer and Seller wherein Escrow Agent is made a party because of acting as Escrow Agent hereunder, or in any suit wherein Escrow Agent interpleads the subject matter of the escrow, Escrow Agent shall recover reasonable attorney's fees and costs incurred with any fees and costs to be paid from and out of the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. The parties agree that Escrow Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of items subject to this escrow, unless such

    misdelivery is due to willful breach of this Agreement or gross negligence of Escrow Agent.

  10.2 Wallis & Wallis, P.A. shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price — which at time of Closing and Delivery shall then include the Deposit, and Closing Cost from Buyer on behalf of Seller.  Upon Closing and Delivery and Wallis & Wallis, P.A. shall from that time only be acting as an agent of Seller.  Upon receipt of the Purchase Price and Closing Cost at time of Closing and Delivery, Buyer shall cease to have any claim to such Purchase Price or Closing Cost as might exist in the event Wallis & Wallis, P.A. was at that time acting as Escrow Agent.

    At the time of Closing and Delivery and following receipt of the full Purchase Price and Closing Costs, Wallis & Wallis, P.A. is expressly not acting as an escrow agent, which is expressly acknowledged by both parties to this Agreement.

    * * * * *

    Upon receipt of the Purchase Price and Closing Cost by Wallis & Wallis, P.A., only Seller shall have any authority to direct Wallis & Wallis, P.A. as to the disbursement of the Purchase Price thereafter, and Buyer . . . . expressly waive[s] any interest in the Purchase Price and will not seek to claim any interest in the Purchase Price once received by Wallis & Wallis, P.A.  Seller expressly authorizes Wallis & Wallis, P.A. to receive the Purchase Price and Closing Cost and disburse the Purchase Price and Closing Cost as Seller solely sees fit and authorizes in writing.

D.E. 1-1.

  The Complaint avers that Solnes wired full payment for the *Symphony* to WWPA and Wallis by May 23, 2011.  *See* D.E. 1 at ¶¶ 11, 12.  Although the Closing was scheduled to take place on May 31, 2011, *id.* at ¶¶ 8, 12-14, the *Symphony* never arrived at Solnes's predetermined place of Delivery, *see id.* at ¶¶13, 14.  Solnes further asserts that on July 9, 2011, he learned why:  the *Symphony* was allegedly sold to another buyer and, despite the Seller's representations in the

Agreement, the Seller had never owned the vessel. *Id.* at ¶ 15.

Upon learning these circumstances, the Complaint continues, Solnes traveled to Defendants' office on July 14, 2011, and Joan Wallis advised him that the $300,000.00 that he had paid was still in the WWPA Trust Account. D.E. 1 at ¶ 16. After this discussion, Solnes spoke with Jack Thibaut, the principal of the Seller companies, who suggested that Solnes instead purchase a Princess 65-foot motor yacht, to which Solnes agreed. *Id.* at ¶ 17.

Although Solnes claims that he never received any draft contract or bill of sale for the Princess motor yacht, without Solnes's authorization, the Complaint avers, Defendants disbursed the $300,000.00 to Jack Thibaut some time after August 8, 2011. *Id.* at ¶¶ 18, 19. When Solnes questioned Defendants as to why the funds were disbursed, Defendants allegedly initially explained that they did so because Solnes had rejected the boat. *Id.* at ¶ 20. On May 20, 2013, however, the Complaint contends, Wallis offered a different explanation for releasing the funds after August 8, 2011: he "felt comfortable that Jack Thibaut would complete the sale of the Princess motor yacht." *Id.* at ¶ 21. To date, Defendants have not returned the $300,000.00 to Solnes. *Id.* at ¶ 22.

Now, Defendants seek to dismiss Solnes's Complaint. Solnes opposes Defendants' Motion, arguing that no basis for dismissal exists.

## *II. Discussion*

*A.     The Thibaut Companies and Jack Thibaut Are Not Indispensable Parties Under Rule 19*

In support of their Motion to Dismiss, Defendants first argue that Unique Boats, Inc., Thibaut International, Inc. (collectively, "Thibaut Companies"), or Jack Thibaut, or some combination of the three, are indispensable parties to this litigation under Rule 19, Fed. R. Civ. P. *See* D.E. 7. Rule 19 governs required joinder of parties. Under this rule, as Defendants argue it is

applicable here, a required party "whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties . . . ." Fed. R. Civ. P. 19(a)(1)(A).  Because this rule applies only if full relief cannot be ordered among the existing parties, the Court first considers whether such relief may be given, even in the absence of the Thibaut Companies and Thibaut, *see Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1345 (11th Cir. 2011) ("*Molinos*"), and concludes that it can.

The party seeking joinder under Rule 19(a) bears the burden of demonstrating the indispensable nature of the party sought to be joined.  *See Molinos*, 633 F.3d at 1347; *see also Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises, PLC*, 174 F. Supp. 2d 1320, 1325 (S.D. Fla. 2001).  In determining whether a party is "indispensable," "'pragmatic concerns, especially the effect on the parties and the litigation,' control."  *Focus on the Family v. Pinellas Suncoast Transit Auth*. 344 F.3d 1263, 1280 (11th Cir. 2003) (citations and internal quotation marks omitted).

Defendants argue that the Thibaut Companies and Thibaut are indispensable parties because Defendants allegedly did not benefit in any way from the transaction, but rather, the Thibaut Companies — and through them, Thibaut — are the ones who accepted and received the entire benefit of the transaction.  *See* D.E. 7 at ¶¶ 4, 5.  The problem with this position arises from the fact that the Thibaut Companies' benefit from the funds at issue is irrelevant to the claims that Solnes presses against Defendants in the Complaint in this case.  Solnes has not alleged a cause of action against Defendants based on the Thibaut Companies and Jack Thibaut's receipt and use of the funds; instead, he has filed claims against Defendants stemming from their alleged failure to comply with their duties as escrow agent in the transaction.  In their Motion, Defendants have pointed to no role

that the Thibaut Companies and Jack Thibaut had in Defendants' alleged failure to act in accordance with their escrow obligations, nor can the Court discern such a role that would warrant the conclusion that full relief cannot be granted without the presence of the Thibaut Companies and Jack Thibaut or that the absence of the Thibaut Companies and Jack Thibaut as parties would unfairly prejudice Defendants,[1] the Thibaut Companies, or Jack Thibaut. *See Molinos*, 633 F.3d at 1347. Defendants have likewise failed to show that they will be subject to multiple liability if the Thibaut Companies or Jack Thibaut are not joined in this action. *See United States v. Rigel Ship Agencies, Inc.*, 432 F.3d 1282, 1291-92 (11th Cir. 2005). Under these circumstances, Defendants have not met their burden to demonstrate that joinder of the Thibaut Companies or Jack Thibaut is indispensable to this litigation.[2] As a result, the failure to join the Thibaut Companies and Jack Thibaut does not provide a basis for dismissal of this action.

---

[1] Defendants do not suggest that the Thibaut Companies or Jack Thibaut are indispensable because they intend to seek indemnification against them if found liable. But even if they had, a right of indemnification, in and of itself, does not necessarily make a party indispensable, and nothing prevents Defendants from seeking to implead the Thibaut Companies or Jack Thibaut under Rule 14, Fed. R. Civ. P., or filing for indemnification separately. *See Med. Lien Management, Inc. v. Frey*, 2013 WL 2456008, *3 (M.D. Fla. June 6, 2013); *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009); *see also Quail Cruises Ship Management Ltd. v. Agencia de Viagens Cvc Tur Limitada*, 2010 WL 1524313, *8 (S.D. Fla. Apr. 14, 2010) (citation omitted); *In re Brandon Overseas, Inc.*, 2010 WL 2812944, *9 (Bankr. S.D. Fla. July 16, 2010) (citations omitted). Because Defendants have not attempted to implead the Thibaut Companies or Jack Thibaut and the parties have not briefed the issue, the Court does not opine now on the propriety of granting any such motion.

[2] Rule 19(c) requires a party seeking nonjoinder of an indispensable party to state "(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." Fed. R. Civ. P. 19(c). Although the Court concludes that the Thibaut Companies and Jack Thibaut are not indispensable parties, Solnes does, in fact, note in his opposition to Defendants' Motion to Dismiss that both of the Thibaut Companies have been administratively dissolved, and Thibaut is currently involved in bankruptcy proceedings where an automatic stay of litigation applies.

<u>B.     No Claim for Breach of Contract Lies Against Defendants Since They Were Not Parties to the Agreement</u>

Defendants next contend that no cause of action for breach of contract lies against them because they were not parties to the Agreement.  As a general rule, non-parties to a contract, such as Defendants, can neither sue nor be sued for breach of a contract to which they were not parties. *Biscayne Inv. Grp., Ltd. v. Guarantee Management Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005); *Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004).  When a non-party is a specifically intended beneficiary of the contract, however, an exception to the general rule exists, and the non-party may sue for breach of contract. *Morgan Stanley DW, Inc.*, 873 So. 2d at 403.  A non-party qualifies for this exception only if the contract "clearly express[es] an intent to primarily and directly benefit" the non-party. *Id.* (citation omitted).  This, in turn, requires a showing that all parties to the contract actually and expressly intended to benefit the non-party. *Id.*  But even if a non-party is an expressly intended beneficiary of the contract, the parties have directed the Court to no authority indicating that such a beneficiary may *be sued* for breach of contract, and the Court has likewise found no such authority.  To the contrary, at least one Florida court that has set forth the elements of a breach-of-a-third-party-beneficiary contract has described them as follows:

(1)     a contract between A and B;

(2)     an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);

(3)     **breach of that contract by either A or B (or both)**; and

(4)     damages to C resulting from the breach.

Additionally, in order to find the requisite intent, it must be shown

> that *both* contracting parties intended to benefit the third party. It is insufficient to show that only one party unilaterally intended to benefit the third party.

*Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994) (citation omitted) (emphasis in original omitted; emphasis added by this Court).  Under this description, the cause of action makes no provision for a third-party beneficiary to be sued for breach of contract.  Moreover, allowing for such a cause of action would transgress principles of contract law because a third-party beneficiary need not be aware of or agree with the contract to which he or she is a third-party beneficiary.  It would therefore be unfair to bind a third party to actions to which it did not affirmatively agree.[3]

Therefore, the Court need not consider here whether Defendants qualify as third-party beneficiaries to the Agreement.  Even if they do, no authority appears to exist for the proposition that, as third-party beneficiaries, they may be sued for breach of contract.  As a result, Defendants' Motion to Dismiss must be granted as it relates to Counts III and IV of the Complaint.

C.      *Solnes Has Stated a Viable Claim for Breach of Implied Contract*

Finally, Defendants invoke Paragraph 10.2 of the Agreement to urge that, under the language of the Agreement, they had no implied contractual duty to hold the funds in escrow until such time as authorized by Solnes to release the funds.  In this regard, they appear to suggest that they are third-party beneficiaries of the contract.  This Court agrees.  Under Florida law, "escrow holders have a fiduciary duty to exercise reasonable skill and ordinary diligence." *SO5 501, LLC v. Metro-Dade*

---

[3]In this case, this situation could have been avoided, had Solnes and Defendants entered into a separate written escrow agreement or had Defendants been required to sign the Agreement. But that did not occur, and it is too late now for Solnes to seek to bind Defendants through the Agreement on a breach-of-contract theory.

*Title Co.*, 109 So. 3d 1192, 1194 (Fla. 3d DCA 2013) (citation omitted). But the parties may limit an escrow holder's liability by contract. *Id.* (citation omitted). Here, that is precisely what happened. As a result, Defendants were specifically intended beneficiaries of the Agreement's limitation on their liability.

While an escrow agreement is not required to be in writing, *see Ullendorff v. Graham*, 80 So. 50, (Fla. 1920), where a writing does exist, it "becomes the primary consideration" and is "all controlling." *Cradock v. Cooper*, 123 So. 2d 256, 257 (Fla. 2d DCA 1960) (citation omitted); *see also SO5 501*, 109 So. 3d at 1194 (citation omitted). Paragraphs 10.1 and 10.2 of the Agreement embody the parties' understanding regarding the escrow arrangement in this case and therefore effectively set forth the terms of the escrow agreement in this matter, even though Defendants are not parties to the written Agreement. Paragraph 10.1 of the Agreement plainly imposes on WWPA duties to act as an escrow agent with regard to the $35,000.00 deposit. *See* D.E. 1-1 at ¶ 10.1. It further requires WWPA to hold the deposit in escrow and disburse it in accordance with the terms and conditions of the Agreement. *Id.* Despite these obligations, however, Paragraph 10.1 also relieves WWPA of any liability "unless . . . misdelivery is due to willful breach of [the] Agreement or gross negligence of Escrow Agent." *Id.*

As for Paragraph 10.2 of the Agreement, it specifies, "Wallis & Wallis, P.A. shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price — which at time of Closing and Delivery shall then include the Deposit, and Closing Cost from Buyer on behalf of Seller." *Id*. at ¶ 10.2. At first glance, this provision may appear to purport to relieve WWPA of any responsibility to act as an escrow agent and of any liability stemming from its disbursement of the full purchase price, which is further defined as including both the "Deposit" and the "Closing Cost."

But under the definition of "full Purchase Price" set forth by Paragraph 10.2, only at the time of closing and delivery would WWPA have ceased operating as an escrow agent with regard to the deposit entrusted to him pursuant to Paragraph 10.1 of the Agreement. According to the Complaint, neither the closing nor the delivery ever occurred in this case. As a result, the "Deposit" never became a part of the "full Purchase Price," so Defendants cannot rely on that section of the Agreement to relieve them of their escrow responsibilities with regard to the deposit.

Turning to the remainder of the funds that Solnes entrusted to Defendants, however — the so-called "Closing Cost," Defendants' liability does appear to be limited by the escrow agreement. Paragraph 10.2 must be construed as defining the term "full Purchase Price" that appears within that section as having two meanings: (1) at the time of "Closing and Delivery," the term included the deposit and the remainder of the funds paid for the yacht by Solnes; and (2) before that time, the term must have meant something else. Had "full Purchase Price" meant only the first definition, Paragraph 10.2 should have said, in relevant part, "Wallis & Wallis, P.A. shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price — which includes the Deposit and Closing Cost from Buyer on behalf of Seller," and the phrase, "which at time of Closing and Delivery shall then include . . ." would be superfluous. But the phrase "which at time of Closing and Deliver shall then include" does appear in the Agreement. Florida law strongly disfavors construction of a contract that would render some of its provisions superfluous when a reasonable interpretation of the contract would give effect to every part of it. *Universal Prop. & Cas. Ins. Co. v. Johnson*, ___ So. 3d ___, 2013 WL 1809639, *4 (Fla. 1st DCA Apr. 30, 2013) (citing *University of Miami v. Frank*, 920 So. 2d 81, 87 (Fla. 3d DCA 2009); *State Farm Mut. Auto. Ins. Co.*, 916 So. 2d 871, 877 (Fla. 2d DCA 2005)).

So the question is, what is that second meaning? To determine this, it is necessary to examine the rest of the Agreement. The first definition of the "full Purchase Price" includes both the "Deposit" and the "Closing Cost," and it is clear from the Agreement that this first definition is meant to be all-inclusive of all funds paid by Solnes. This necessarily means that all monies paid that were not part of the "Deposit" must be part of the "Closing Cost."

Moreover, because there are only two components of the first definition of "full Purchase Price" and the second definition of the phrase must differ from the first, the second definition must refer to only one of the two ingredients composing the first definition of "full Purchase Price": either "Deposit" or "Closing Cost." But "Deposit" is already defined elsewhere in the Agreement, and the Agreement states that WWPA actS as the escrow agent with regard to it. *See* D.E. 1-1 at ¶ 2. Nor does any part of the Agreement purport to relieve WWPA of responsibility to act as the escrow agent with respect to the "Deposit" until "Closing and Delivery" occur. Therefore, the second definition of "full Purchase Price" must mean "Closing Cost," or all monies paid by Solnes for the purchase of the yacht, except the Deposit. By its express terms, the escrow agreement provides that WWPA "shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price," meaning, before "Closing and Delivery," with respect to receipt of the "Closing Cost." Instead, the terms of the escrow agreement make WWPA the Thibaut Companies' agent with regard to receipt of the "Closing Cost." *See id.* at ¶ 10-2. As a result, pertaining to the "Closing Cost" only, no cause of action stemming from the alleged breach of duties as an escrow agent may lie against Defendants. But, as noted previously, the escrow agreement does not relieve Defendants of their responsibility with respect to the $35,000.00 deposit.

Nevertheless, the fact that Defendants appear to have had an ongoing fiduciary duty with

regard to the deposit does not necessarily mean that Solnes can state a claim for breach of implied contract.[4]  Here, Solnes asserts that a contract implied in fact existed between Solnes and Defendants.  A contract implied in fact occurs when the assent of the parties can be inferred from the course of dealing or course of performance of the parties.  *See Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126, 1131 (Fla. 1st DCA 1997); *see also L & H Constr., Inc. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997)).  It "requires the same elements as an express contract — . . . a mutual intent to contract — and differs only in the parties' method of expressing mutual consent."  *Jenks v. Bynum Trans., Inc.*, 103 So. 3d 1217, 1224 (Fla. 1st DCA 2012).

      To state a cause of action for breach of contract, a plaintiff must demonstrate that (1) a valid contract existed, (2) a material breach of the contract occurred, and (3) damages resulted from the material breach.  *Havens v. Coast Fla., P.A.*, ___ So. 3d ___, 2013 WL 2494713 (Fla. 2d DCA June 12, 2013) (citation omitted).  To establish a valid contract, a plaintiff must generally show offer, acceptance, and consideration, although, as explained above, where an implied-in-fact contract exists, no offer and acceptance need be demonstrated, as it is found based on the parties' course of conduct.  *See* Restatement (Second) of Contracts § 3.e. (1981).  For consideration to exist, "[i]t is not necessary that a benefit should accrue to the person making the promise.  It is sufficient that something of value flows from the person to whom it is made, or that [the person] suffers some prejudice or inconvenience and that the promise is the inducement to the transaction."  *Terzis v.*

---

[4]Regardless of whether an action for breach of implied contract may exist, however, an escrow agent may be liable for damages for breach of the fiduciary duty owed to the parties to the escrow.  *See Armbruster v. Alvin*, 437 So. 2d 725, 726 (Fla. 3d DCA 1983) (citations omitted).

*Pompano Paint & Body Repair, Inc.*, ___ So. 3d ___, 2012 WL 6601316, *3 (Fla. 4th DCA Dec. 19, 2012) (citation and internal quotation marks omitted).

Based on this definition of "consideration," a valid contract implied in fact existed. Solnes and Defendants, through their actions and partial performance of the terms of their agreement, contracted with each other for WWPA and, as WWPA's principal and agent, Wallis, to act as an escrow agent for the $35,000.00 deposit for the purchase of the *Symphony*. And, even though no written contract between Solnes and Defendants existed since Defendants were not signatories to the Agreement, the parties' intent is nonetheless embodied in the Agreement, as evidenced by the parties' actions in conformity with the Agreement. Under the Agreement, Defendants agreed to hold the deposit in escrow and to disburse it in accordance with the terms and conditions of the Agreement. In reliance on Defendants' promise to disburse the funds only in accordance with the terms and conditions of the Agreement, Solnes entrusted the $35,000.00 deposit to Defendants. When Defendants allegedly disbursed the deposit to Jack Thibaut before the terms and conditions of the Agreement had been satisfied, Solnes suffered prejudice in the form of loss of the deposit. *See id.* (a plaintiff who stored his boat with a defendant who promised to keep the boat safe from damage or theft suffered prejudice recognized as consideration when the defendant allegedly allowed the boat to be stolen from its facility). Thus, a valid implied-in-fact contract existed between Solnes and Defendants, for Defendants to serve as escrow agent for the $35,000,00 deposit, in accordance with the terms of the Agreement. Accordingly, Defendants' Motion to Dismiss must be denied as it relates to Counts I and II of the Complaint.

### *III.   Conclusion*

For the foregoing reasons, Defendants Wallis & Wallis, P.A., and Peter Wallis's Motion to

Dismiss [D.E. 7] is **GRANTED IN PART and DENIED IN PART**. It is **GRANTED** with respect to Counts III and IV of the Complaint, but it is **DENIED** as it regards Counts I and II of the Complaint. Accordingly, Counts III and IV of the Complaint are hereby **DISMISSED**.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 18th day of July 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

copies:

The Honorable Patrick Hunt
Counsel of Record

-14-