UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61225-CIV-ROSENBAUM/HUNT

STIG SOLNES,

    Plaintiff,

v.

WALLIS & WALLIS, P.A., and
PETER WALLIS, individually,

    Defendants.

_____/

## ORDER

This matter is before the Court on Defendants Wallis & Wallis, P.A., and Peter Wallis's Motion for Summary Judgment [ECF Nos. 21, 36] and Plaintiff Stig Solnes's Motion to Strike Supplemental Affidavit of Defendant Peter Wallis and Request for Hearing on Summary Judgment [ECF No. 43]. The Court has carefully considered the motions, all supporting and opposing filings, and the record. For the reasons set forth below, the Motion to Strike is denied, and the Motion for Summary Judgment is granted in part and denied in part.

### *I.  Background*

This matter arises from a failed yacht sale. Essentially, Plaintiff Stig Solnes ("Solnes") asserts that although he paid for a vessel, the seller did not deliver it. Defendant Wallis & Wallis, P.A. ("WWPA"), acted as the escrow agent for the sale. Solnes contends that WWPA accepted money on the seller's behalf and forwarded it to the seller, even though WWPA and Defendant Peter Wallis ("Wallis") knew that the boat in question had been sold to someone else and would never be

delivered to Solnes.  Solnes initially sued each Defendant for breach of contract and breach of implied contract regarding their escrow responsibilities.  *See* ECF No. 1.

Upon motion by Defendants, the Court dismissed Plaintiff's breach-of-contract claims, leaving only his claim for breach of implied contract as it pertained to the deposit paid by Solnes. *See* ECF No. 10.  As explained in the prior Order, Solnes had entered into a contract with Unique Boats, Inc., and Thibaut International, Inc. ("Seller"), to purchase a yacht for the sum of $300,000. The purchase price was to be paid in two installments: a deposit of $35,000 to be paid by May 6, 2011, and the balance of $265,000, to be paid at closing.

Defendants were not parties to this contract, but the contract provided that WWPA would have certain responsibilities regarding the monies paid by Solnes.  Because the contract between Solnes and the Seller set forth within it the understanding that the parties to the contract had regarding WWPA's responsibilities and further, because WWPA acted in accordance with the contract provisions describing WWPA's duties, the Court concluded in its prior Order that the contract reflected Solnes, Defendants, and the Seller's intent regarding WWPA's duties and created a valid contract implied in fact between Solnes and Defendants.

Under the terms of the implied-in-fact contract, Defendants' liability as the escrow agent was limited.  In this regard, Defendants were to serve as escrow agent for the $35,000 deposit for the purchase of the vessel, in accordance with the terms set forth in paragraphs 10.1 and 10.2 of the purchase agreement.  *See* ECF No. 10.  But no implied-in-fact contract existed between the parties with respect to the remaining $265,000 because the purchase agreement specifically limited Defendants' liability with regard to these funds.  *See id.* at 10-11; ECF No. 19-1 (stating that WWPA "shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price").

Solnes filed an Amended Complaint, alleging claims for breach of implied contract against WWPA and Wallis (Counts I and II), as it allegedly pertained to both the deposit and the balance paid on the yacht and adding a claim for money had and received against WWPA (Count III).  ECF No. 19.  Defendants again moved to dismiss Solnes's Amended Complaint.  *See* ECF No. 21.  The Court entered an Order Converting Defendants' Second Motion to Dismiss to a Motion for Summary Judgment because Solnes's response to the Second Motion to Dismiss relied on various documents, deposition transcripts, and other discovery.  *See* ECF No. 34.  In converting the Second Motion to Dismiss into a motion for summary judgment, the Court directed Defendants to file a statement of material facts and a new brief in support of the motion for summary judgment.  The Court also instructed Solnes to file a response to the motion for summary judgment and Defendants to file a reply.  The Motion for Summary Judgment is now ripe for disposition.

## *II.  Material Facts*[1]

**A.     The Vessel Purchase and Sale Agreement**

Solnes entered into a Vessel Purchase and Sale Agreement (the "Agreement") with Seller for the purchase of a 2001 62-foot Fairline Squadron known as the *M/Y Symphony*.  ECF No. 19-1.  Jack Thibaut and the Thibaut Companies (Thibaut International, Inc., and Unique Boats, Inc.) hired WWPA to draft the Agreement and act as escrow agent.  *See* ECF No. 36 at ¶ 3.  Under the terms of the Agreement, the purchase price of $300,000.00 was to be paid to the Seller by wire transfer to

---

[1]The facts are drawn from the parties' Local Rule 56.1 statements of fact and other relevant portions of the record.  *See* ECF Nos. 19, 36, 40, 39.  As to the Rule 56.1 statements, the Court relies upon only facts Plaintiff admitted and facts that are deemed admitted based on Plaintiff's failure to respond to Defendants' statement, where the record supports Defendants' statement.  *See* S.D. Fla. L. R. 56.1(b).

the account of WWPA or by cashier's check made payable to WWPA—IOTA account. ECF No. 19-1 at 2. The Agreement called for Solnes to pay the purchase price in two transactions — a $35,000.00 deposit and the remainder of the fee. *See id.*

The terms of the Agreement provided as follows with respect to WWPA:

> 10.1 *Wallis & Wallis, P.A. shall act as an Escrow Agent with regard to the Deposit only* and shall be subject to responsibilities as an Escrow Agent as follows:
>
> Any Escrow Agent receiving funds or equivalent is authorized and agrees by acceptance of them to deposit them promptly, hold same in escrow and, subject to clearance, disburse them in accordance with terms and conditions of this Agreement. Escrow Agent may, at Escrow Agent's option, continue to hold the subject matter of the escrow until the parties mutually agree to its disbursement; or until a judgment of a court of competent jurisdiction shall determine the rights of the parties; or Escrow Agent may deposit same with the Clerk of the Circuit Court having jurisdiction of the dispute. Upon notifying all parties concerned of such action, all liability on the part of Escrow Agent shall fully terminate, except to extent of accounting for any items previously delivered out of escrow. Any suit between Buyer and Seller wherein Escrow Agent is made a party because of acting as Escrow Agent hereunder, or in any suit wherein Escrow Agent interpleads the subject matter of the escrow, Escrow Agent shall recover reasonable attorney's fees and costs incurred with any fees and costs to be paid from and out of the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. *The parties agree that Escrow Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of items subject to this escrow, unless such misdelivery is due to willful breach of this Agreement or gross negligence of Escrow Agent.*
>
> 10.2 *Wallis & Wallis, P.A. shall not act as an Escrow Agent with regard to the receipt of the full Purchase Price* — which at time of Closing and Delivery shall then include the Deposit, and Closing Cost from Buyer on behalf of Seller *upon Closing and Delivery and Wallis & Wallis, P.A. shall from*

> *that time only be acting as an agent of Seller.* Upon receipt of the Purchase Price and Closing Cost at time of Closing and Delivery, Buyer shall cease to have any claim to such Purchase Price or Closing Cost as might exist in the event Wallis & Wallis, P.A. was at that time acting as Escrow Agent.
>
> *At the time of Closing and Delivery and following receipt of the full Purchase Price and Closing Costs, Wallis & Wallis, P.A. is expressly not acting as an escrow agent, which is expressly acknowledged by both parties to this Agreement.*
>
> \* \* \* \* \*
>
> *Upon receipt of the Purchase Price and Closing Cost by Wallis & Wallis, P.A., only Seller shall have any authority to direct Wallis & Wallis, P.A. as to the disbursement of the Purchase Price thereafter, and Buyer . . . . expressly waive[s] any interest in the Purchase Price and will not seek to claim any interest in the Purchase Price once received by Wallis & Wallis, P.A. Seller expressly authorizes Wallis & Wallis, P.A. to receive the Purchase Price and Closing Cost and disburse the Purchase Price and Closing Cost as Seller solely sees fit and authorizes in writing.*

ECF No. 19-1 (emphasis added).

**B.     Payment by Solnes and Disbursement of Funds by WWPA**

Although the Agreement called for a $35,000 deposit, Solnes actually wired a $30,000 deposit to WWPA's IOTA Trust Account on May 5, 2011, and later wired the remaining $270,000 on May 23, 2011. ECF No. 36 at ¶ 4. WWPA, as escrow agent, held the deposit and purchase amount for the vessel. *Id*. The Closing was originally scheduled to take place on May 23, 2011, but it was pushed back to May 31, 2011. ECF No. 39 at ¶ 4. Defendant Wallis testified that he learned that the parties had pushed back the closing date shortly after May 23, 2011. *See* ECF No. 39 at 2. Despite Solnes's payment of the full purchase price, the *Symphony* never arrived at Solnes's

predetermined place of delivery — Norway. *see* ECF No. 19 at ¶¶ 14-15.  Solnes states that on July 9, 2011, he learned why:  the *Symphony* was allegedly sold to another buyer and, despite the Seller's representations in the Agreement, the Seller had never owned the vessel.  *Id.* at ¶ 16.

Upon learning these circumstances, Solnes traveled to Defendants' office on July 14, 2011.  *Id.* at ¶ 20.  Solnes claims that when he arrived at WWPA's offices, Wallis's wife, Joan Wallis, advised him that the $300,000.00 that he had paid was still in the WWPA Trust Account.  ECF No. 19 at ¶ 20, ECF No. 39 at ¶ 12.  Solnes further alleges that Mrs. Wallis promised, on behalf of WWPA, to return his money on the same day, as contemplated by the terms of the Agreement in the event of Seller's default.  *Id.*  Defendants deny that Mrs. Wallis made any promise to return Solnes's money to him.  ECF No. 36 at ¶ 12.

Sometime after July 14, 2011, Solnes claims to have spoken with Thibaut, who suggested that Solnes instead purchase a Princess 65-foot motor yacht.  ECF No. 19 at ¶ 22.  Solnes agreed to engage in negotiations regarding the replacement boat, but no final agreement was ever reached.  *Id.*

Although the facts are not clear as to when the funds were disbursed, the parties do not dispute that, at some point, Defendants disbursed the $300,000.00 to Jack Thibaut. *See* ECF No. 36 at ¶¶ 7-8; ECF No. 19 at ¶¶ 23, 24.  Wallis claims that at the time the escrow funds were disbursed, he thought that the closing on the vessel had taken place on May 23, 2011.  *See* ECF No. 36 at ¶ 7.  According to Wallis, he learned only later that Solnes and Thibaut had agreed to extend the closing date.  *Id*.

Solnes, however, disputes Wallis's contention that at the time that the escrow funds were disbursed, Wallis was under the impression that the closing for the vessel had taken place.  *See* ECF

No. 39 at ¶ 7.  In this regard, Solnes points to the fact that Wallis disbursed a majority of the $30,000 deposit on May 6, 2011 — well before the original May 23, 2011, closing date.[2]  *Id.*

Despite Solnes's repeated demands, to date, Defendants have not returned the $300,000.00 to Solnes.  *See* ECF No. 19 at ¶ 27.  Defendants claim that they distributed the money in accordance with the terms of the Agreement.  *See* ECF No. 36 at ¶ 10.  Moreover, Defendants contend that any funds that it distributed from WWPA's IOTA account prior to the closing date (*i.e.*, the $24,895 disbursement on May 6, 2011) were not funds that it received in relation to the vessel sale that is the subject of this matter.  *Id.*

### *III.  Discussion*

**A.     Plaintiff's Motion to Strike**

Before determining the merits of Defendants' Motion for Summary Judgment, the Court first addresses Plaintiff's Motion to Strike [ECF No. 43], which relates to the Supplemental Affidavit of Wallis (the "Affidavit") filed by Defendants along with their Reply to the Motion for Summary Judgment.  *See* ECF No. 40.  In the Affidavit, Wallis makes various declarations in an apparent attempt to clarify the disbursements made by WWPA to Thibaut.  *See id.*  Specifically, Wallis states that in the months of March 2011 through May 2011, the WWPA IOTA account received several hundred thousand dollars in deposits with respect to various vessel transactions in which Thibaut was involved.  *See* ECF No. 40-1 at ¶ 3.  Wallis further explains that "at the time [WWPA] disbursed the $24,895.00 from its IOTA account on May 5, 2011, it was at the instruction of Jack Thibaut, and it was my understanding that there were sufficient funds in the Wallis & Wallis, P.A. IOTA account

---

[2]According to Solnes, on May 6, 2011, Wallis disbursed $24,895 to Thibaut.  *See* ECF No. 39 at ¶ 7.  Wallis claims that the disbursement may have been for another boat sale related to Thibaut but unrelated to Solnes.  *Id.*

sufficiently well in excess of the $30,000.00 deposit from Stig Solnes to make that disbursement." *Id*.

In opposition to summary judgment, Solnes points to the disbursement of the $24,895 on May 6th as evidence of Defendants' wrongdoing and breach of the Agreement, claiming that Wallis distributed the majority of the deposit before he was entitled to do so under the Agreement. *See* ECF No. 39 at 5-7. Therefore, Solnes takes issue with Wallis's Affidavit and seeks to strike it as, essentially, a sham affidavit that contradicts Wallis's deposition testimony.

In his Affidavit, Wallis also declares, "On or about July 8, 2011 [WWPA] disbursed the remaining $6,236.84 at the instruction of Jack Thibaut in a wire to Land & Sea Brokers, Inc. [T]he sum was included in the wired amount of $32,000. See Exhibit." *See* ECF No. 40-1 at ¶ 9. Solnes contends that the Affidavit should also be stricken because the amount allegedly wired on July 8, 2011, was not provided in a prior production request. Although Solnes concedes that records produced by Defendants demonstrate that the disbursement took place on July 6, 2011, he argues that the date set forth in the Affidavit (*i.e.*, July 8, 2011) is inconsistent with the actual date of disbursement. In their response, Defendants argue that the Affidavit is not inconsistent with the discovery produced in the case and emphasize that the Affidavit stated that the disbursement took place "*on or about* July 8, 2011." Because the dates are off by only two days, Defendants contend that this difference qualifies as "on or about July 8, 2011."

"A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment." *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1275-76 (S.D. Fla. 2004) (striking plaintiff's affidavit "insofar as it is inconsistent with [p]laintiff's deposition testimony") (citing *McCormick v. City of fort*

*Lauderdale*, 333 F. 3d 1234, 1240 (11th Cir. 2003).  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also Aira v. Best Nat. Vending, Inc.*, 2012 WL 4935086 at *9-10 (S.D. Fla. 2012) ( "to the extent [the] subsequent affidavit attempts to create a fact question . . . it is a sham and will not be considered").

Under these guiding principles, the Affidavit will not be stricken.  First, the Court agrees with Defendants that Wallis's declaration that WWPA disbursed the remaining $6,236.84 "on or about July 8, 2011" is not inconsistent with documents that show that the disbursement actually occurred on July 6, 2011.  Because the dates differ by only two days, the use of the phrase "on or about" appropriately reflects when the transaction occurred.

Second, Solnes argues that, contrary to Wallis's prior deposition testimony, the Affidavit now appears to suggest that the May 6, 2011, transfer of $24,895 to Thibaut did not come from Solnes's $30,000 deposit.  The Court respectfully disagrees that the Affidavit should be stricken for this reason because the declaration is not inconsistent with Wallis's prior deposition testimony.  Instead, Wallis previously testified that the $24,895 payment to Thibaut *may* have been from Solnes's deposit.  Although Wallis initially testified that he disbursed part of the $30,000 deposit (*i.e.*, $24,895) on May 6, 2011, later in the deposition, he stated that the disbursement could have been

related to another transaction involving Mr. Thibaut.[3]  In clarifying his testimony, Wallis stated that it was "possible" that the money came from the $30,000 Solnes deposit.

In order to strike the Affidavit, the Court must find that it is inconsistent with prior deposition testimony that was clear and unequivocal.  That the Court cannot do under the circumstances.  Consequently, the Court declines to strike the Affidavit.

**B.     Defendants' Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting Anderson, 477 U.S. at 247-48).

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all reasonable doubts against the movant. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  Further, the Court does not weigh conflicting evidence. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007).

---

[3] When asked during his deposition why he sent $24,895 to Thibaut on May 6, 2011, Wallis stated, "Off the top of my head, I could not tell you.  It may be that he had other boat deals going on and that money was involved in that." *See* ECF No. 22-2 at 37:4-39:6.  Further, Wallis stated that it was "possible" that the transfer came from Solnes's funds. *See id.*

Upon discovering a genuine material dispute, the Court must deny summary judgment and proceed to trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

### 1. Counts I and II for Implied-In-Fact Contract

In support of their Motion for Summary Judgment with respect to the implied-in-fact-contract counts, Defendants raise three main arguments. First, they assert that Solnes fails to state a claim for implied-in-fact contract. Second, Defendants contend that the Agreement limited their responsibility. Third, Defendants claim that Wallis cannot be held liable in this matter because Solnes cannot pierce the corporate veil.

### a. The Court Has Already Ruled That An Implied-In-Fact Contract Exists As it Pertains to the Deposit

Defendants contend that they are entitled to summary judgment because no implied-in-fact contract was created between Solnes and Defendants.

In its previous Order, the Court already determined that a valid implied-in-fact contract existed between Solnes and Defendants as it related to the deposit only. *See* ECF No. 10 at 8-14. The Court will not repeat that analysis here except to note that Defendants point to no evidence contradicting the Court's conclusion that an implied-in-fact contract existed between Solnes and Defendants as it related to the deposit. Thus, Defendants' Motion for Summary Judgment is denied as it regards the existence of an implied-in-fact contract for the deposit.

### b. Defendants' Are Not Entitled to Summary Judgment on the Breach-of-Implied-In-Fact Contract Claim Regarding the Deposit

Next, Defendants argue that they are entitled to summary judgment because, as an escrow agent, they did not breach any alleged duty to Solnes when they disbursed the funds to Thibaut. Defendants point to the language of the Agreement, emphasizing that Section 10.1 states, "The parties agree that Escrow Agent shall not be liable to any party or person for misdelivery to Buyer or Seller of items subject to this escrow, unless such misdelivery is due to willful breach of this Agreement or gross negligence of Escrow Agent." *See* ECF No. 36 at 7-8.

Defendants further point to Section 10.2 of the Agreement, which states, "[WWPA] shall not act as an Escrow Agent with regard to the receipt of the full purchase price — which at the time of Closing and Delivery shall then include the Deposit and Closing Cost from Buyer on behalf of Seller upon Closing and Delivery and [WWPA] shall from that time only be acting as agent of Seller." *See* ECF No. 36 at 8. According to Defendants, once WWPA received Solnes's entire $300,000

payment, its role as an escrow agent ceased and it then became the agent of its clients, Thibaut and the Thibaut Companies.

While the Court agrees with Defendants that the terms of the Agreement govern their liability, a question of fact exists as to whether any misdelivery of funds from the deposit occurred and whether such alleged misdelivery was due to a willful breach or gross negligence on the part of Defendants. Evidence suggests that WWPA may well have disbursed Solnes's deposit funds to Thibaut on May 6, 2011 — well before it should have.

Solnes maintains that Defendants "did nothing to check and see if there was an actual closing before forwarding the funds" and that Wallis failed to perform "the most basic of due diligence." ECF No. 39 at 4-5. Solnes also points to evidence suggesting that Defendants engaged in extremely poor bookkeeping. For instance, during Wallis's deposition, he was unable to clearly answer whether certain disbursements from the WWPA IOTA account related to Solnes's deposited money. Thus, even if a jury believes Defendants' contention that the $24,895 disbursement made on May 6, 2011, did not come from Solnes's deposit, the fact-finder might well question where a majority of Solnes's deposit went, since Defendants appear to be unable to account for it in their records. In short, a question of fact exists concerning whether an early disbursement of the deposit monies occurred, and, if so, whether the misdelivery was due to a willful breach or gross negligence on the part of Defendants. As a result, summary judgment must be denied.

      c.    **The Alleged Conversation Between Solnes and Mrs. Wallis Does Not Amount to a New Agreement**

Solnes claims that on July 14, 2011, when he traveled to the offices of WWPA, Mrs. Wallis promised to hold the $300,000 deposit in the IOTA account for Solnes's benefit until the funds could

be returned to him. According to Solnes, this alleged promise to refund the money constituted a new and separate express agreement by WWPA not to distribute the monies to Seller and instead to hold the funds for the benefit of Solnes until the funds could be transferred back to him.

"A valid contract arises when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010) (internal quotation and citation removed). An oral contract is subject to the basic tenets of contract law such as offer, acceptance, consideration, and sufficient specification of essential terms. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citation omitted). A party who asserts an oral contract must prove its existence by a preponderance of the evidence. *Id.* (citing *Bautista v. Walter & Bernstein, P.A.*, 378 So. 2d 1321, 1322 (Fla. 3d DCA 1980)).

As an initial matter, Defendants deny that Mrs. Wallis promised Solnes the return of his money. They further contend that even if she made such a promise, Mrs. Wallis had no authority to bind WWPA to the new agreement. ECF No. 21 ¶ 29.

It is well settled that an agent may bind his or her principal based on real or actual authority "conferred in fact by the principal or . . . founded on apparent or ostensible authority arising when the principal allows or causes others to believe the agent possesses such authority. . . ." *Hobbs Constr. & Dev., Inc. v. Colonial Concrete Co.*, 461 So. 2d 255, 259 (Fla. 1st DCA 1984); *see also* Restatement (Third) of Agency § 2.03 (2006) (defining apparent authority as "the power held by an agent . . . when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations"). Solnes does not present any evidence that Mrs. Wallis had any authority, either actual or apparent, to bind Defendants.

But even assuming that she did, no new agreement arose between the parties because of a lack of consideration. "It is a fundamental principle of contract law that a promise must be supported by consideration to be enforceable." *Office Pavilion S. Fla., Inc. v. ASAL Products, Inc.*, 849 So. 2d 367, 370 (Fla. 4th DCA 2003) (citing Restatement (Second) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.")). This principle applies with equal force to the modification of a contract. *Id.; see also Schneir v. State*, 43 So. 3d 135, 137 (Fla 3d DCA 2010) ("like an initial contract, a modification or novation requires lawful consideration for its validity"). Consideration requires a return promise or performance. Restatement (Second) of Contracts § 71 (1981); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998).

Here, Solnes does not provide any evidence that the alleged new contract was supported by consideration. Even if Mrs. Wallis agreed to provide Solnes with $300,000, it does not appear that Solnes was required to provide any consideration for the actions of WWPA. Consequently, no mutual consideration exists to support the finding of a new express agreement between the parties or a modification of the existing Agreement.[4] Accordingly, the terms limiting Defendants' liability as set forth in the Agreement govern.

### d.    Piercing the Corporate Veil

Finally, Defendants argue that Wallis cannot be held personally liable under Count II unless Solnes can pierce the corporate veil. Defendants assert, because Solnes has not set forth any

---

[4]Nor can Solnes establish that the alleged promise by Mrs. Wallis to return the $300,000 constituted a novation to the terms of the Agreement. The essential elements of a novation are (1) the existence of a previously valid contract; (2) the agreement of all the parties to a new contract; (3) the extinguishment of the original contractual obligation; and (4) the validity of the new contract. *Pinnacle Holding, Inc. v. Biologics, Inc.*, 643 So. 2d 642, 644 (Fla. 2d DCA 1994). For the reasons already expressed, any new agreement fails for lack of consideration.

evidence that suggests that WWPA was organized or operated for an improper or fraudulent purpose, the corporate veil may not be pierced and Wallis is entitled to summary judgment in his favor. In further support of their contention, Defendants note that WWPA existed separately from Wallis, has been a Florida corporation since 2011, and has not operated for an improper or a fraudulent purpose.

In response, Solnes claims that it need not pierce WWPA's corporate veil because Wallis individually held the implied contractual and fiduciary duty to hold funds for the benefit of Solnes. Solnes also points out that Wallis is an attorney who was holding funds in his trust account. Ultimately, Solnes relies on *Moransais v. Heatherman*, 744 So. 2d 973 (Fla. 1999), for the proposition that a professional may be held individually liable for his acts or omissions that are rendered while working on behalf of a professional association.

In *Moransais*, the Florida Supreme Court held that the economic-loss rule did not bar a tort claim for professional negligence against an employee of an engineering company with whom the plaintiff was in privity. 744 So. 2d at 983. The defendant in *Moransais* was an engineer who failed to detect and disclose defects in a home that the plaintiff purchased. In determining that the engineer, who was a member of a corporation, could be held personally liable, the Court discussed the fact that Florida law recognizes liability for these who render professional services. *Id*. at 978. Indeed, in its discussion, the Court looked to an analogous law recognizing that a lawyer who renders professional services owes a duty of care regardless of the fact that the lawyer is a part of a business entity such as a professional association. *Id*.

The *Moransais* Court cited to Section 621.07, Fla. Stat., pertaining to professional associations, which sets forth the responsibility of individuals for their negligent acts. Section 621.07, Fla. Stat., better known as Florida's Professional Association Practices Act, expressly

provides for liability against a professional for the 'negligent or wrongful acts or misconduct . . . committed by that person . . . while rendering professional service. . . ." Fla. Stat. § 621.07 (2012). The Act, however, applies only to tort actions. First, the language of the statute speaks in tort terms. Second, if the Act applied to contract actions, corporate structure would be meaningless in contractual actions because contractual signors on behalf of corporations could always be sued in their individual capacities for any causes of action relating to the contract, including breach of contract. Solnes's reliance on *Moransais* is misplaced in the context of the instant matter because Solnes has not brought a claim for negligence against Wallis. Rather, Solnes brought a claim for beach of implied-in-fact contract.

Because Solnes's claim against Wallis is for breach of implied-in-fact contract, Solnes must pierce the corporate veil in order to hold Wallis personally liable for WWPA's alleged breach. When, as here, a plaintiff sues a corporation's agent, that plaintiff faces the foundational principle that the corporate form protects agents of the corporation from being held personally liable. The only exception to this rule is piercing of the corporate veil. To do this, a plaintiff must allege that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Gaspirini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2009) (per curiam) (citation omitted); *See also Dania Jai Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984) (plaintiff must show that the corporation was "formed or used for some illegal, fraudulent, or other unjust purpose which justifies piercing of [its] corporate veil.").

Solnes has failed to come forward with any evidence of any of these necessary elements. For example, Solnes has not set forth any facts that suggest that WWPA was formed or operated for an improper or fraudulent purpose. Nor has Solnes shown that Wallis dominated and controlled WWPA to the extent that it lacked an independent existence. Because Solnes has not advanced any facts to suggest that the Court should disregard the corporate form and hold Wallis liable in his individual capacity for WWPA's alleged breach, Wallis is entitled to summary judgment on Count II — Solnes's implied-in-fact breach-of-contract claim.

### 2. Count III for Money Had and Received

Finally, Defendants contend that they are not liable to Solnes under Count III for money had and received. In Count III, Solnes alleges that WWPA received $300,000 from him due to either mistake or "upon consideration in the Agreement which has failed." *See* ECF No. 19 at ¶ 43. Solnes states that "[t]he circumstances are such that WWPA in all fairness should be required to return the $300,000 to Plaintiff." *Id*. at ¶ 44. In this regard, Solnes accuses Defendants of distributing funds to Thibaut when Defendants "knew the consideration under the prior agreement failed, and failed to return same upon demand." *See* ECF Nos. 22, 36. Defendants deny these allegations, contending that they were not involved in the closing, and aver that they acted in accordance with the Agreement and distributed the escrow funds accordingly. Defendants further claim that they are entitled to summary judgment on Count III because they were not unjustly enriched by the transactions.

"A count for money had and received may be proved by any legal evidence, showing that the defendant has possession of the money of the plaintiff, which in equity and good conscience he ought to pay over." *Payne v. Humana Hosp. Orange Park*, 661 So. 2d 1239, 1240 (Fla. 1st DCA 1995) (quoting *Cullen v. Seaboard Air Line R.R. Co.*, 63 Fla. 122, 129, 58 So. 182, 184 (Fla. 1912)).

Although a count of money had and received is an action at law, it "is founded upon the equitable principle that no one ought to be unjustly enriched at the expense of another." *Sharp v. Bowling*, 511 So. 2d 363, 365 (Fla. 5th DCA 1987) (citations omitted). For this claim, a plaintiff need only plead facts "which show that an injustice would occur if money were not refunded." *Moore Handley, Inc. v. Major Realty Corp.*, 340 So. 2d 1238, 1239 (Fla. 4th DCA 1976) (citation omitted). The underlying principle behind a count of money had and received is that "one has money in his hands belonging to another." *Id.*

Here, a genuine issue of fact exists as to Count III for money had and received. Although Defendants state that they were not unjustly enriched by the transactions because they did not profit from the transaction, the record raises a question as to whether Defendants obtained $3,000 as payment for the failed sale. Indeed, during his deposition, Wallis was asked, "[O]f the $300,000, did you obtain permission from your client to use any of it to pay your bill?" *See* ECF No. 22-2 at 123. Wallis responded "Possibly . . . $3,000." *Id*. Accordingly, if Defendants did obtain such funds, and the funds are traceable to the attempted sale of the vessel, Defendants may be liable under a theory of money had and received.

Moreover, it is unclear whether Defendants utilized any of Solnes's $30,000 deposit to make disbursements to Thibaut prior to the closing date set forth in the Agreement. The use of Solnes's deposit for other vessel sales that WWPA was handling for Thibaut could also support a finding that WWPA was unjustly enriched. Because genuine issues of material fact exist, summary judgment must be denied as to Count III.[5]

---

[5] Defendants rely on *McCaughney v. Bank of Am., N.A.*, in which the Court stated that "[b]ecause an express contract was present, [the plaintiff] could not pursue equitable remedies." 279 F. App'x 794, 797 (11th Cir. 2008) (citing *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group*, 283 Ga. App. 686 (2007) (claim for unjust enrichment is not available when there is an express

### *IV.  Conclusion*

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiff Stig Solnes's Motion to Strike Supplemental Affidavit of Defendant Peter Wallis and Request for Hearing on Summary Judgment [ECF No. 43] is hereby **DENIED**.

2. Defendants Wallis & Wallis, P.A., and Peter Wallis's Motion for Summary Judgment [ECF No. 21, 36] is **GRANTED IN PART AND DENIED IN PART.**  The Motion is granted with respect to the breach of implied-in-fact-contract count alleged against Peter Wallis (Count II).  The Motion is denied with respect to the remaining counts alleged against WWPA (Counts I and III).  Recovery on Count I remains limited to the $30,000 deposit, in accordance with this Court's previous Order.  *See* ECF No. 10.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 16th day of April 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record

---

contract between the parties)).  Defendants' reliance on *McCaughney* is misplaced because this case does not involve an express contract between Solnes and Defendants.  Accordingly, Solnes may pursue his claim for money had and received.